UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

      Plaintiff,

v.                                   Criminal Case No. 13-30484

Farid Fata,                        Sean F. Cox
                                      United States District Judge

      Defendant.
_____/

**<u>ORDER</u>**

On August 6, 2013, Defendant Farid Fata ("Defendant") was charged in a criminal complaint with Healthcare Fraud in violation of 18 U.S.C. § 1347. This matter is currently before this Court on the Government's appeal of Magistrate Judge David Grand's release order, and Defendant's cross-appeal of that same order, under 18 U.S.C. § 3145. The parties have fully briefed the issues and this Court held an evidentiary hearing on August 13, 2013. For the reasons set forth below, the Court shall DENY Defendant's cross-appeal and shall DENY IN PART AND GRANT IN PART the Government's appeal.

As set forth below, having considered the factors set forth in § 3142(g), this Court concludes that there is a combination of conditions than can reasonably assure both the safety of the community and Defendant's appearance in Court. The Court shall require Defendant to post a $9,000,000 secured bond. In addition, this Court shall issue a new Order Setting Conditions of

Release, retaining all original conditions imposed by Magistrate Judge Grand.[1]

In addition, this Court shall require that, pursuant to 18 U.S.C. § 3142(g)(4), before posting the above secured bond, Defendant must make a sufficient *Nebbia* showing before this Court regarding the source of the funds used for the bond. If Defendant wishes to post bond, Counsel for Defendant shall contact this Court's Docket Manager to schedule a date for the required *Nebbia* hearing.

## BACKGROUND

On August 6, 2013, Defendant was charged in a criminal complaint with Healthcare Fraud in violation of 18 U.S.C. § 1347. (D.E. No. 1). On that same date, Magistrate Judge David Grand held a detention hearing. On that date, Magistrate Judge Grand indicated on the record that he had strong concerns that Defendant may be flight risk but that he needed more information. He then issued an Order of Temporary Detention Pending Hearing Pursuant to Bail Reform Act and continued the detention hearing to August 8, 2013.

On August 8, 2013, Pretrial Services submitted a report stating that Defendant poses a risk of non-appearance due to his ties to a foreign country (Lebanon) and his considerable assets. Pretrial Services recommends that Defendant be detained pending trial.

On August 8, 2013, after conducting another hearing, Magistrate Judge Grand issued an Order Setting Conditions of Release and requiring a secured cash Appearance Bond in the amount of $170,000. The Order Setting Conditions of Release includes, among other things, the following conditions: 1) Defendant shall surrender his passport to Pretrial Services and shall not

---

[1]Because this Court is retaining all original conditions of release previously imposed, it is not necessary to have Defendant appear in Court to review the conditions of release.

2

obtain a passport or other international travel documents; 2) Defendant is restricted to home confinement; 3) Defendant shall be subject to location monitoring; 4) Defendant shall "refrain from working at any of his offices;" 5) Defendant shall "refrain from any medical billing;" 6) Defendant shall "refrain from writing any prescriptions or treating patients;" 7) Defendant will need to surrender any enhanced drivers license to Pretrial Services; and 8) Defendant shall have no access or check-writing with respect to the MHO business.  Magistrate Judge Grand further ordered that his ruling to release Defendant on $170,000 secured bond would be held in abeyance pending a ruling on the Government's appeal of his ruling.

The Honorable David Lawson was the presiding judge for the United States District Court for the Eastern District of Michigan on August 8, 2013.  The undersigned was scheduled to become the presiding judge for the Court on the following day, August 9, 2013.  On the morning of August 9, 2013, counsel for the parties in this action contacted this Court's chambers, requesting a hearing.

This Court was aware that Judge Lawson held a hearing in this matter on August 8, 2013. Given that Judge Lawson did not issue a written order on August 8, 2013, this Court obtained, and carefully reviewed, the transcript of the hearing before Judge Lawson. (*See* 8/8/13 Hrg. Tr., D.E. No. 13).

The transcript reflects that on August 8, 2013, Judge David Lawson began, but did not conclude, consideration of the Government's appeal.  The hearing before Judge Lawson began late in the day, sometime after 5:00 p.m.  The transcript reflects that the  Government immediately sought to appeal Magistrate Judge Grand's release order under § 3145 and, as a result, the Government did not have time to file a written motion before appearing before Judge

Lawson.  The transcript also reflects that Defendant seeks to cross-appeal several of the conditions of release set by Magistrate Judge Grand, but that Defense Counsel had not yet filed a written motion before appearing before Judge Lawson.  In addition, given the timing of the appeal, a written transcript of the hearings held before Magistrate Judge Grand was not available to Judge Lawson and he did not have an opportunity to listen to any audio recordings of those hearings.

At the August 8, 2013 hearing before Judge Lawson, Counsel for the parties argued their respective positions.  No witnesses were presented at that time.  During the hearing, Judge Lawson stated that, "for the time being," he did not see a basis to set aside Judge Grand's order, except that a hearing under 18 U.S.C. § 3142(g)(4) would be required before the Clerk's Office may accept any money towards any bond in this matter.  (*See* 8/8/13 Hrg. Tr.).  Judge Lawson did, however, state that he was not convinced that the amount of the secured bond set by Magistrate Judge Grand was appropriate.  Judge Lawson further advised counsel that the issues would have to be examined further and that he, *or any other judicial officer reviewing the Government's appeal*, ought to be able to revisit the amount of bond in addition to holding a hearing under § 3142(g)(4) regarding the source of any money proposed to secure Defendant's release on bond:

> THE COURT: . . . I think what I was going to say is this: I think that we're *kind of shooting in the dark at this point with respect to the funds available.*  And the government, I think, *needs some additional information in order to make its case that Dr. Fata has the wherewithal to flee under that would essentially be a permanent basis.*
> And so I think that I *or whatever judicial officer is reviewing this* ought to be able to revisit the question of bond at any time on motion by the government or anyone else or the defendant with respect to the amount, which I think might be subject to revision on a reasonable basis.

4

(8/8/13 Hrg. Tr. at 45) (emphasis added).  Judge Lawson stated that, other than the amount of the

bond and the need for a hearing under § 3142(g)(4), he did not see a reason to set aside any of the

other conditions of release imposed by Magistrate Judge Grand.  (8/8/13 Hrg. Tr. at 46-47).

Counsel requested that Judge Lawson continue the hearing on Friday, August 9, 2013.

Judge Lawson advised that he could not do so, but that counsel could contact the judge presiding

on August 9, 2013 –  which was the undersigned:

> THE COURT: . . . Mr. Andreoff, you asked for a hearing tomorrow and I will not
> entertain that.  Judge Cox will be presiding tomorrow.  If you want to approach
> him, you can ask him.
> . . . .
> MR. ANDREOFF: Your Honor, is the Court going to rule on my other – the other
> conditions?
> THE COURT: I did.
> MR. ANDREOFF: You left it?
> THE COURT: I said, I see no reason to set aside Judge Grand's order or to
> modify it, other than that one condition.
> MR. ANDREOFF: And that's the *amount of the bond*.
> THE COURT: That's correct.

(8/8/13 Hrg. at 46-47) (emphasis added).

Thereafter, Counsel contacted this Court's chambers on the morning of August 9, 2013,

and requested a hearing.  As presiding judge, this Court gave this matter expedited consideration

and immediately began gathering the written transcripts and audio recordings of the hearings held

before Magistrate Judge Grand and Judge Lawson.   After doing so, this Court held a hearing

with the parties at approximately 2:30 p.m. on August 9, 2013.  At approximately 3:00 p.m. on

August 9, 2013, this Court issued an Order Continuing Hearing on Government's Appeal Of

Release Order.  (D.E. No. 7).  That Order explained that, given the procedural history, this Court

is now presiding over the Government's appeal of Magistrate Judge Grand's release order and

5

Defendant's cross-appeal.  The Order further stated:

> The Court hereby **ORDERS** that the hearing on the Government's appeal of Magistrate Judge Grand's release order and Defendant's cross-appeal are **CONTINUED** to **Tuesday, August 13, 2013**, at **9:00 a.m.**  At that time, this Court shall: 1) consider Defendant's cross-appeal of various conditions of release set by Magistrate Judge Grand; 2) determine the appropriate amount of the secured bond that Defendant must post in order to be released; and 3) conduct a "*Nebbia* hearing," pursuant to 18 U.S.C. § 3142(g)(4), to determine the source of any money proposed to secure Defendant's release on bond.
>
> **IT IS FURTHER ORDERED** that no later than **Monday, August 12, 2013, at 10:00 a.m:** 1) the Government shall file a written motion seeking to appeal Magistrate Judge Grand's release order; and 2) Defendant shall file a written motion cross-appealing any conditions of release set by Magistrate Judge Grand that Defendant opposes.
>
> **IT IS FURTHER ORDERED** that no later than **Monday, August 12, 2013, at 10:00 a.m.**, Counsel for the Government and Counsel for Defendants may each file a brief of no more than 10 pages, setting forth: 1)  their respective positions as to the appropriate amount of the secured bond; and 2)  their respective positions as to what evidentiary showing should be required of Defendant under § 3142(g)(4).
>
> **IT IS SO ORDERED**.

(D.E. No. 7).

Thereafter, on the morning of August 12, 2013, Defendant filed a "Supplemental Motion For Release On Bond And To Modify The Existing Release Order" (D.E. No. 10) and the Government filed a "Memorandum Regarding Bond And Evidentiary Showing Under 18 U.S.C. § 3142(g)(4)"  (D.E. No. 11) and a formal "Motion Pursuant To 18 U.S.C. § 3145 Appealing Magistrate Judge's Order Releasing Defendant On Bond."  (D.E. No. 12).

At approximately 6:00 p.m. on August 12, 2013, Judge Lawson issued an order stating the appearance bond "is hereby modified to include the following condition: 'The clerk may not accept a cash payment as a bond deposit unless the court has approved the source of funds after a

6

hearing under 18 U.S.C. § 3142(g)(4)," that the Government's appeal and the Defendant's cross appeal are denied in all other respects, but that "if either party desires further modification of any condition of bail, they may seek it by filing an appropriate motion." (D.E. No. 14).

Thereafter, on the night of August 12, 2013, the Government filed a "Motion To Modify Defendant's Conditions Of Release To Increase Secured Bond." (D.E. No. 15).

On the morning of August 13, 2013, this Court proceeded with the hearing it had scheduled in its August 9, 2013 Order. Prior to the August 13, 2013 hearing, this Court had listened to all audio recordings of the hearings held before Magistrate Judge Grand, reviewed the written transcript of the brief hearing held before Judge Lawson on August 8, 2013, and had reviewed all pending motions and supplemental briefs filed by the parties. At the August 13, 2013 hearing, the Government presented one witness, John Scarbrough. The Government also presented several exhibits that were admitted into evidence. Mr. Scarbrough is a forfeiture analyst for the Federal Bureau of Investigation who is currently assigned to the healthcare fraud unit. This Court finds Mr. Scarbrough to be a credible witness. Mr. Scarbrough testified that, based on the F.B.I.'s investigation to date, Defendant has a total of $9,414,910.00 in assets available to him. And that amount *is in addition to* the 7.1 million dollars in accounts that the F.B.I. has already seized and the 2.1 million dollars worth of real estate on which the F.B.I. has placed liens. The $9,414,910.00 in assets available to Defendant consists of: 1) $6,581,301.00 in assets not traced and not seized; 2) $1,927,977 in assets identified but not seized; and 3) $905,632.00 in assets available to Defendant's wife.

## ANALYSIS

Both Defendant and the Government are seeking review of Magistrate Judge Grand's release order, pursuant to 18 U.S.C. § 3145.

Defendant asks the Court to reduce the amount of his secured bond to $25,000.00 and to remove the following conditions of release imposed by Magistrate Judge Grand: "a) electronic tether[2]; b) 24 hour home confinement with no opportunity to leave the home; c) no practice of medicine; d) no prescribing of controlled substances; and d) no management of his medical practice." (D.E. No. 10 at 4).

The Government contends that there is no condition or combination of conditions that will reasonably assure Dr. Fata's appearance at trial given his substantial resources, incentive to flee the country given the gravity of the charges in this action, the weight of the evidence, and Defendant's significant ties to another country. The Government therefore asks the Court to revoke Magistrate Judge Grand's Release Order and order that Defendant be detained pending trial. (D.E. No. 12). Alternatively, the Government takes the position that if the Court orders Defendant released pending trial, the Court should require a substantially increased secured bond and should require Defendant to establish that any bond he pledges was not derived from illegal sources.

This Court reviews *de novo* an appeal from a magistrate judge's order of release or detention. *U.S. v. Leon*, 766 F.2d 77 (2d Cir. 1985); *see also U.S. v. Koubriti*, 2001 WL 1525270 (E.D. Mich. 2001); 9B Fed. Proc., L.Ed. § 22:1987 *Motion for review of Release Order* ("When

---

[2]At the August 6, 2013 detention hearing before Magistrate Judge Grand, Defense Counsel stated on the record that Defendant had no objection to a tether.

motions for review under 18 U.S.C.A. § 3145(a) are made, review of the original order is *de novo*.").

A criminal defendant may be detained pending trial if a judicial officer determines that there is "no condition or combination of conditions [that] will reasonably assure the appearance of the person as required and the safety of any other person and the community . . ."  18 U.S.C. § 3142(e).  In considering whether any condition of release could reasonably assure a defendant's appearance and the safety of the community, the Court considers various factors, including:  1) the nature and circumstances of the offenses charged (§3142(g)(1)); 2) the weight of the evidence against the person (§3142(g)(2));  3) the history and characteristics of the person, including: a) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appear at court proceedings and b) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law (§3142(g)(3)); and  4) the nature and seriousness of the danger to any person the community that would be posed by the person's release (§3142(g)(4)).

As to the first factor, the nature and circumstances of the offense charged, the offense charged here is healthcare fraud in violation of 18 U.S.C. § 1347 and circumstances of the alleged crime are very serious, weighing in favor of detention.  Defendant is charged with engaging in a healthcare fraud scheme under which he deliberately misdiagnosed patients with cancer and other diagnoses to justify expensive testing and the administration of unnecessary cancer treatments – including chemotherapy.   Thus, this is not the typical type of healthcare

9

fraud case where a healthcare provider is alleged to have over-billed for services actually performed or billed Medicare for services that were not actually performed. Rather, the Government alleges that Defendant has intentionally misdiagnosed patients with cancer and then actually provided them with unnecessary treatments that are essentially poison. As the Government has stressed during these hearings, although defendants convicted of healthcare fraud are generally subject to a statutory maximum sentence of 10 years, Defendant potentially faces a far greater sentence if convicted in this particular case. That is because, under §1347, if the healthcare fraud violation at issue results in serious bodily injury the maximum sentence is 20 years and if the violation results in death the maximum sentence is life imprisonment. 18 U.S.C. § 1347(a)(2). Thus, Defendant faces substantial prison time if convicted.

Moreover, the weight of the evidence against Defendant is significant. The Government states that multiple witnesses, who are or were employed by Defendant as nurse practitioners and as a physician, have been interviewed by federal agents will testify at trial as to Defendant's fraudulent scheme.

But most significant to this Court, while Defendant has no prior criminal history, the Government has established that Defendant has a motive, and the means, to flee the country.

As stated above, Defendant faces substantial prison time if convicted. Defendant also has significant ties to another country to which he could flee – Lebanon. Defendant first entered this country in 1993 and became a United States citizen in 2009. Defendant and his wife have significant family ties in Lebanon, where Defendant's parents and his wife's parents live. Defendant has limited extended family in the United States. Defendant and his wife recently traveled to Lebanon and Defendant and his wife purchased a home in Lebanon for her parents.

10

Finally, if Defendant's alleged fraudulent conduct began before he was naturalized, Defendant could ultimately be deported (i.e., face substantial prison time followed by removal). Thus, Defendant has a clear motive to flee this jurisdiction.

Defendant also has extraordinary financial assets, including liquid assets, that could be used to flee this jurisdiction. Defendant owns several healthcare-related businesses. It has been difficult for the Government to determine how much money Defendant actually has because he has numerous business entities and accounts (different companies, LLCs, trusts, charities, children's accounts, retirement accounts, etc.). While the Government has already seized or placed liens on a significant portion of Defendant's assets, the evidence presented by the Government establishes that Defendant still has at least $9,414,910.00 in assets available to him. Thus, Defendant still has access to an extraordinary amount of assets that could be used to flee this jurisdiction.

While the Government has focused more on the risk of flight than the danger to the community in asking that Defendant be detained, this Court also concludes that there would be a serious risk to persons in the community if Defendant were released on bond without restrictions as to practicing medicine. Magistrate Judge Grand imposed special release conditions that prohibit Defendant from practicing medicine while released on bond (i.e., Defendant shall refrain from working at any of his offices, refrain from any medical billing, refrain from writing any prescriptions or treating patients, etc.). This Court agrees with Magistrate Judge Grand that, absent those restrictions, Defendant would pose a danger to persons in the community if he were released on bond. Again, this is *not* a typical healthcare fraud case wherein the defendant is alleged to have either over-billed for services actually performed or billed Medicare for services

11

that were not actually performed.  Rather, the Government alleges that Defendant is intentionally misdiagnosing patients with cancer and other diagnoses and then actually administering chemotherapy and other treatments that are unnecessary and cause significant physical harm to patients.

Considering the totality of the circumstances and the factors set forth in § 3142(g), this Court concludes that if Defendant is released on bond there is a serious risk that Defendant will flee this jurisdiction and threaten the safety of persons in the community.  Nevertheless, this Court concludes that there is a combination of conditions than can reasonably assure both the safety of the community and that Defendant will not flee this jurisdiction.

This Court shall require Defendant to post a $9,000,000 secured bond.  In addition, this Court shall issue a new Order Setting Conditions of Release, retaining all original conditions previously imposed by Magistrate Judge Grand

This Court shall also require that, pursuant to 18 U.S.C. § 3142(g)(4), before posting the above surety bond, the Defendant shall make a *Nebbia* showing before this Court regarding the source of the funds for the bond.  If Defendant wishes to post bond, Counsel for Defendant shall contact this Court's Docket Manager to schedule a date for the required *Nebbia* hearing.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Defendant's Cross-Appeal of Magistrate Judge Grand's Release Order, challenging the amount of the secured bond and various conditions of release, is DENIED.

IT IS FURTHER ORDERED that the Government's appeal of Magistrate Judge Grand's Release Order is GRANTED IN PART AND DENIED IN PART.  The Motion is DENIED to the

12

extent that the Court declines to order Defendant detained pending trial.  The Motion is GRANTED to the extent that the Government requests an increased secured bond.

Having considered the factors set forth in § 3142(g), the Court concludes that there is a combination of conditions than can reasonably assure both the safety of the community and Defendant's appearance in Court.  The Court hereby ORDERS that Defendant shall post a $9,000,000 secured bond before being released from custody.   In addition, this Court shall issue a new Order Setting Conditions of Release, retaining all original conditions previously imposed by Magistrate Judge Grand.

IT IS FURTHER ORDERED that this Court shall require that, pursuant to 18 U.S.C. § 3142(g)(4), before posting the above secured bond, the Defendant must make a *Nebbia* showing before this Court regarding the source of the funds for the bond.  Counsel for Defendant shall contact this Court's Docket Manager to schedule a date for the required *Nebbia* hearing.

IT IS SO ORDERED.

S/Sean F. Cox_____
Sean F. Cox
United States District Judge

Dated:  August 13, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 13, 2013, by electronic and/or ordinary mail.

S/Jennifer McCoy_____
Case Manager